165 F.3d 137
 Trevor THOMAS, Plaintiff-Appellant,
v.
John ROACH, William Bailey, Gerald Bonaventura, Santiago
Llanos, David Riehl, Leonard Sattani, John Cueto,
in their official capacities, and the
City of Bridgeport,
Defendants-Appellees.
 Docket No. 98-7623.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 19, 1998.
Decided Jan. 7, 1999.
 
 W. Martyn Philpot, Jr., New Haven, CT, for Plaintiff-Appellant.
 Barbara Brazzel-Massaro, Associate City Attorney, Bridgeport, Connecticut, for Defendants-Appellees.
 Before OAKES and WALKER, Circuit Judges, and COTE,* District Judge.
 OAKES, Senior Circuit Judge:
 
 I. INTRODUCTION
 
 1
 Bridgeport police officers shot Trevor Thomas while arresting him. Thomas sued the individual police officers and the City of Bridgeport under 42 U.S.C. § 1983 on grounds that the officers violated his civil rights by using excessive force, and under 42 U.S.C. §§ 1985(3) and 1986 on grounds that they conspired to violate his civil rights. Thomas also alleged various state tort claims. The United States District Court for the District of Connecticut (Dominic Squatrito, Judge) granted the defendants' motion for summary judgment on the federal claims and dismissed the state law claims without prejudice.
 
 
 2
 We vacate in part and affirm in part. Because the parties disputed material facts, the district court should not have determined that the officers reasonably used force and thus enjoyed qualified immunity from the § 1983 claims. We therefore vacate the summary judgment on the § 1983 claims against the individual police officers. We affirm the dismissal of the § 1983 claim against the City of Bridgeport and the claims under §§ 1985(3) and 1986 against all defendants.
 
 II. FACTS
 
 3
 At approximately 8 p.m. on September 1, 1993, Addie Hunt of 81 Bell Street, Bridgeport, informed the Bridgeport Police Department that she had been threatened. Officer William Bailey responded to the call and went to Hunt's house. Hunt told Bailey that a man had threatened to set her house on fire. She then identified Thomas, who was standing in front of 111-113 Bell Street, as the man who had threatened her, and warned Bailey that Thomas was "crazy." Bailey first called out to and then approached Thomas. Thomas walked into the rear entrance of 111-113 Bell Street. Bailey called for back-up.
 
 
 4
 The back-up officers, including Thomas Roach, Santiago Llanos, Gerald Bonaventura, John Cueto, David Riehl, Leonard Sattani, and Ferdinand Ferrao (who was not a defendant below) arrived at 111-113 Bell Street and dispersed to cover potential exits. Sattani and Ferrao went to the front of the building, while the remaining officers approached the rear door.
 
 
 5
 When Bailey approached the rear door where he had seen Thomas enter, Bailey again called out to Thomas and said that he wanted to speak to him. Thomas told Bailey to leave him alone. Bailey responded that they were police officers and that they were entering the building. The officers then heard glass breaking directly above them. Roach, Bonaventura, Bailey and Llanos ascended the back stairs, and Riehl and Cueto joined the officers at the front door.
 
 
 6
 Carlene Forney, a third floor tenant, told the officers that a "crazy man" had just broken her window, run though her apartment, and exited the front door. According to Llanos, Forney also stated that the man was carrying a knife. The officers exited Forney's apartment through the front door and entered the third floor landing.
 
 
 7
 The stairwell was unlit, except for the illumination from flashlights held by Roach and Bailey.[1] Roach took the lead position as the officers descended the stairs between the third floor and the second floor landing. When Roach reached the second floor landing and approached the steps leading to the first floor, he encountered Thomas in the stairwell. The officers fired two rounds of shots at Thomas. Bailey, Llanos, and Bonaventura fired the first round of shots at Thomas from their positions behind Roach. Roach heard the first round of shots fired from behind him, and saw Thomas's recoil from the force of the bullets. Roach then fired the second round of three shots at Thomas.
 
 
 8
 Thomas and the officers offered different versions of the events surrounding the shooting. The officers contended that Thomas was a danger to Roach. According to Roach, Thomas held a knife in one hand and a rock in the other, and Thomas tried to stab Roach. The other officers claimed that they saw Thomas attempt to strike Roach or make a downward "stabbing motion" toward him. Roach justified the second round of shots as necessary because Thomas lunged forward after the first volley of shots and Roach feared that Thomas would stab him. Roach also claimed that he was at risk of being shot by the other officers and so he had to shoot Thomas in order to push him away.
 
 
 9
 By contrast, Thomas contended that he did not threaten or attempt to harm any of the officers. He argued that he was never on the second floor landing with Roach. Rather, he claimed that the officers shot him from the second floor landing while he was on the small intermediate landing between the second and first floors, noting that the spent bullets and casings were found on the second floor landing and bloodstains were found on the intermediate landing. Thomas also argued that he could not have made a downward stabbing motion when he was located below Officer Roach, and that neither the rock nor the knife that he allegedly held came into contact with any of the officers. Although Thomas conceded in state court proceedings related to this incident that he had a knife in his hand while in the house, he did not indicate whether he held the knife while in Forney's apartment or while in the stairwell. Thomas argued in an affidavit to the district court and continues to argue on appeal that he did not have a knife while in the stairwell.
 
 
 10
 In any event, the officers fired a total of twelve bullets at Thomas. Thomas received multiple gun shot wounds and fell down the stairs. The four officers walked down the stairs, exited the building, and were not involved in the investigation that followed at the scene. The crime scene investigators found a large rock and a knife. Neither object was found to have Thomas's fingerprints on it.
 
 
 11
 Thomas was indicted on various state charges for events arising out of the incident, including assault on a peace officer based on his alleged attempt to stab Officer Roach, and trespass in the second degree based on his breaking of the window and subsequent excursion through Forney's apartment. Thomas pled nolo contendre to the state charges. (Notably, as mentioned above, Thomas answered "yes" to the question "Did you ever have a knife in your hand?" during a state court proceeding before he pled to the charges. He later contradicted this statement in his affidavit to the district court.)
 
 
 12
 The shooting rendered Thomas a paraplegic. In August 1995, Thomas sued the individual police officers and the City of Bridgeport under 42 U.S.C. § 1983, alleging that the shooting constituted unreasonable force in violation of the Fourth and Fourteenth Amendments of the United States Constitution and that the City maintained and condoned a custom of depriving individuals of their constitutional rights by the traditions, policies and ordinances promulgated by its Department of Police Services. He also brought claims under 42 U.S.C. §§ 1985(3) and 1986, arguing that the officers' acts and omissions before, during and after the shooting constituted a conspiracy against him. Thomas also alleged state tort claims of assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress arising from the shooting.
 
 
 13
 The United States District Court for the District of Connecticut (Squatrito, Judge) granted summary judgment in favor of the defendants on all the federal claims and dismissed the pendent state law claims without prejudice. Judgment was entered March 24, 1998.
 
 
 14
 Thomas appeals.
 
 III. DISCUSSION
 A. Standard of Review
 
 15
 We review the district court's grant of summary judgment de novo. See Hemphill v. Schott, 141 F.3d 412, 415 (2d Cir.1998). To prevail on a motion for summary judgment, the moving party must show that there are no genuine issues of material fact and that the moving party is entitled to that judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding such a motion, the district court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. See Hemphill, 141 F.3d at 415 (citing Giano v. Senkowski, 54 F.3d 1050, 1052 (2d Cir.1995)).
 
 B. Claims Under 42 U.S.C. § 1983
 
 16
 Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States. See 42 U.S.C. § 1983; Sykes v. James, 13 F.3d 515, 519 (2d Cir.1993). Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); Sykes, 13 F.3d at 519. To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right. See 42 U.S.C. § 1983; Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); Sykes, 13 F.3d at 519.
 
 
 17
 Thomas sought damages under 42 U.S.C. § 1983 on grounds that the defendants violated his Fourth and Fourteenth Amendment rights under the United States Constitution. The defendant police officers and City of Bridgeport argued that the officers' use of deadly force in response to the perceived threat to Officer Roach was objectively reasonable and that the officers were therefore entitled to qualified immunity. The district court agreed and granted summary judgment to the defendants on the § 1983 claim on the basis of qualified immunity.
 
 1. Claims Against The Police Officers
 
 18
 The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 127 (2d Cir.1997). This policy is justified in part by the risk that the "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
 
 
 19
 Overcoming qualified immunity entails a two-part process. First, a plaintiff must allege the violation of a clearly-established constitutional or statutory right. Second, qualified immunity will be denied only if a reasonable official should have known that the challenged conduct violated that established right. See Rodriguez v. Comas, 888 F.2d 899, 901 (1st Cir.1989). In measuring "reasonableness," we consider the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest. See Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). We also acknowledge that "police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain and rapidly evolving--about the amount of force that is necessary in a particular situation." Id. at 397, 109 S.Ct. 1865. "The objective reasonableness test is met--and the defendant is entitled to immunity--if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir.1995) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).
 
 
 20
 Although the second-step reasonableness inquiry requires a focus on the particular facts of a given case, a defendant is entitled to summary judgment on qualified immunity grounds when
 
 
 21
 "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ]" to believe that he was acting in a fashion that did not clearly violate an established federally protected right.
 
 
 22
 Id. (quoting Robison v. Via, 821 F.2d 913, 921 (2d Cir.1987) (alteration in original)). Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness. See id. at 420-21; see also Hemphill, 141 F.3d at 416-18.
 
 
 23
 We therefore engage in this two-part inquiry to determine whether the court below properly granted summary judgment to the defendants on the basis of qualified immunity.
 
 
 24
 Thomas alleged the violation of a clearly-established constitutional right when he alleged that the police used excessive force when arresting him. The Fourth Amendment protects against the use of excessive force by police officers in carrying out an arrest. See U.S. Const. amend. IV (stating that people shall "be secure in their persons ... against unreasonable ... seizures"); Graham, 490 U.S. at 394-95, 109 S.Ct. 1865. Thus, the officers had qualified immunity only if it were objectively reasonable for them to believe that their conduct did not violate the Fourth Amendment. See Ricciuti, 124 F.3d at 127-28 (citing Anderson, 483 U.S. at 641, 107 S.Ct. 3034).
 
 
 25
 Under the standard discussed in Lennon, 66 F.3d at 420-21, the district court should not have granted summary judgment to the defendants on qualified immunity grounds unless it concluded that the only result a fair jury could reach is that reasonable police officers could disagree about whether the force used against Thomas was excessive. The district court could not properly reach this conclusion if any material facts were in dispute. See id.; Hemphill, 141 F.3d at 416-18.
 
 
 26
 As noted above, the parties offered different versions of what happened that evening, particularly as to (1) whether Thomas was armed at the time of the shooting; (2) whether Thomas attempted to harm Officer Roach before the first volley of shots; (3) whether it was feasible for the officers to warn Thomas before shooting him; and (4) whether Thomas lunged at Roach after the first volley of shots such that Roach had to shoot Thomas three more times. The district court acknowledged that Thomas disputed the officers' versions of the facts, but held that Thomas had failed to create a material issue of fact concerning whether he had a knife or lunged at Roach. The court declined to consider Thomas's affidavit stating that he did not have a knife, noting that the affidavit contradicted Thomas's statements made at the state court proceedings. Rather, the court credited the officers' testimony, noted that the investigators found a knife and a rock at the crime scene, and concluded that there were no material facts in dispute that precluded summary judgment.
 
 
 27
 In our view, the district court erred by so holding. Thomas and the officers disputed material facts that implicate the reasonableness of the officers' use of force. The defendants argue on appeal that there were no disputed material facts and that "Thomas has created what he contends is a genuine issue of fact." They note that Thomas pled nolo contendere to various state charges for events arising out of the incident, including one count of assault on a peace officer and one count of trespass based on his excursion through Forney's apartment. But by pleading nolo contendere, Thomas did not admit that he assaulted Roach; rather, he only admitted his recognition that he probably would lose if he went to trial. See North Carolina v. Alford, 400 U.S. 25, 35-36 & n. 8, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Thus, while a § 1983 action for arrest without probable cause may be barred by the arrestee's conviction at trial or by the arrestee's guilty plea, see Cameron v. Fogarty, 806 F.2d 380, 388-89 (2d Cir.1986); Roundtree v. City of New York, 778 F.Supp. 614, 619 (E.D.N.Y.1991), Thomas's § 1983 claim predicated on excessive force during his arrest is not barred by his nolo contendere plea to the offense for which he was arrested.[2]
 
 
 28
 Moreover, Thomas's statements made during the state court proceeding prior to his plea do not estop him from disputing the officers' version of the facts and arguing that he did not pose a threat to the officers. It is true that, as a general matter, "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 619 (2d Cir.1996) (quoting Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir.1969)). A plaintiff cannot defeat a well-pleaded motion for summary judgment simply by submitting an affidavit that contradicts his earlier sworn statements. However, this rule should usually apply only where a plaintiff's affidavit contradicts former testimony during which he had been "examined at length" on an issue. Mack v. United States, 814 F.2d 120, 124 (2d Cir.1987) (quoting Perma, 410 F.2d at 578). Thomas's earlier statements regarding the knife were vague and inconclusive. As a result, Thomas's affidavit does create a genuine factual issue.
 
 
 29
 Because the district court could not determine whether the officers reasonably believed that their force was not excessive when several material facts were still in dispute, summary judgment on the basis of qualified immunity was precluded. See Hemphill, 141 F.3d at 416-18 (holding that fact issue as to whether arrestee posed threat to officer, and whether officer's shooting of arrestee was objectively reasonable, precluded summary judgment on the basis of the officer's qualified immunity); Robison, 821 F.2d at 924 (affirming denial of summary judgment when parties provided conflicting accounts of the events that led up to the plaintiff's claim of excessive force). We therefore vacate the summary judgment on Thomas's § 1983 claim brought under the Fourth Amendment and remand for further proceedings.
 
 
 30
 Summary judgment was appropriate, however, on Thomas's claims under the Fourteenth Amendment. As we discussed in Hemphill, "excessive force used by officers arresting suspects implicates the Fourth Amendment's prohibition on unreasonable seizures, rather than the Fourteenth Amendment's guarantee of substantive due process." Hemphill, 141 F.3d at 418 (citing Graham, 490 U.S. at 394, 109 S.Ct. 1865). We therefore affirm the summary judgment on Thomas's claims predicated on alleged violations of his Fourteenth Amendment rights.
 
 2. Claims Against The City of Bridgeport
 
 31
 Thomas also sought damages from the City of Bridgeport, alleging that the City was liable for his injuries because the City "maintained and condoned a custom of depriving individuals ... of their constitutional rights through its traditions, policies, ordinances, regulations and decisions officially adopted and promulgated" by its police department. He cited evidence that other people had alleged that their civil rights had been violated by Bridgeport police officers, such as several civilian complaints against Officers Roach and Llanos. He contended that the City, although well aware of the allegations of police misbehavior, "took little or no steps to prevent future violations."
 
 
 32
 A municipality is subject to liability for damages under § 1983 for the unconstitutional acts of its employees. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Such liability cannot result from a theory of respondeat superior; rather, it can be imposed only if the acts in question were carried out in "execution of a government's policy or custom." Id. at 694, 98 S.Ct. 2018; see also Walker v. City of New York, 974 F.2d 293, 296 (2d Cir.1992). A municipality may be liable under § 1983 in cases of police brutality where the City's failure to supervise or discipline its officers amounts to a policy of deliberate indifference. See Fiacco v. City of Rensselaer, 783 F.2d 319, 326 (2d Cir.1986) (agreeing that a City may be liable under § 1983 if it were "knowingly and deliberately indifferent to the possibility that its police officers were wont to use excessive force and that this indifference was demonstrated by [the City's] failure ... to exercise reasonable care in investigating claims of police brutality in order to supervise the officers in the proper use of force"); Carnegie v. Miller, 811 F.Supp. 907, 912 (S.D.N.Y.1993).
 
 
 33
 The district court granted summary judgment in favor of the City of Bridgeport after it granted summary judgment on the basis of qualified immunity to the police officers on the § 1983 claims. Citing City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), the district court reasoned that "[i]f no individual police officers were held liable, the City should be exonerated." Because we are reversing the summary judgment in favor of the defendant police officers on the § 1983 claims, the district court's justification for summary judgment in favor of the City is not valid.
 
 
 34
 But we can affirm the summary judgment if Thomas did not show that the City of Bridgeport maintained or condoned a custom or practice of depriving individuals of their constitutional rights through its regulation of the police department, and that the officers' alleged acts were the result of the City's policies. See Carnegie, 811 F.Supp. at 912 (granting summary judgment to city defendants when plaintiff in § 1983 excessive force action did not come forward with specific facts showing a genuine issue for trial as to whether a City policy was responsible for alleged constitutional injuries).
 
 
 35
 In our view, Thomas did not meet this burden. Thomas's evidence of other civilian complaints against Officers Roach and Llanos and his claim that the City "took little or no steps to prevent future violations" did not support his claim for municipal liability. The City maintains that it investigated all of the civilian complaints cited by Thomas. For example, Thomas cites four complaints against Officer Roach. According to the City, Roach was exonerated in two complaints, the third complaint named the wrong officer, and the fourth complaint, which named Officers Roach and D'Amore, was considered to be unfounded, and, in any case, primarily concerned D'Amore. The one complaint against Officer Llanos, which alleged that Llanos rudely intimidated a driver he had stopped for a motor vehicle violation, was not sustained. Thomas's evidence was not sufficient to show that the City of Bridgeport had a policy of deliberate indifference that led to his injuries.
 
 
 36
 Thomas also argues in his reply brief that the City of Bridgeport could also be liable because it failed to issue "widely accepted and non-lethal means [by] which to apprehend Thomas," such as "batons, nightsticks, mace, pepper spray or Tasers" to the officers. We need not consider this argument because it is raised for the first time in his reply brief. See Keefe on Behalf of Keefe v. Shalala, 71 F.3d 1060, 1066 n. 2 (2d Cir.1995) (citing United States v. Gigante, 39 F.3d 42, 50 n. 2 (2d Cir.1994)).
 
 
 37
 Because Thomas has not shown that any municipal policy was the moving force behind the alleged constitutional deprivation, summary judgment was proper on his § 1983 claim against the City of Bridgeport. See Carnegie, 811 F.Supp. at 912.
 
 C. Claims Under 42 U.S.C. § 1985(3)
 
 38
 Thomas also sued the defendant police officers and City of Bridgeport under 42 U.S.C. § 1985(3), which 42 U.S.C.A. § 1985(3) provides in part:
 
 
 39
 If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.
 
 
 40
 To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. See Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d 584, 586-87 (2d Cir.1988) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). A conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.' " LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir.1995) (quoting United States v. Rubin, 844 F.2d 979, 984 (2d Cir.1988)). Furthermore, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir.1993) (quoting United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)).
 
 1. Claims Against The Police Officers
 
 41
 Thomas alleged that by failing to stop Roach from firing the second round of bullets at him, the acts and omissions of the officers constituted a conspiracy under 42 U.S.C. §§ 1985(3) and 1986. The district court found that Thomas failed to satisfy the requirements of a claim for conspiracy and granted summary judgment in favor of the defendants on the claims under § 1985(3). The court reasoned that the officers had responded reasonably to the perceived threat posed by Thomas to his community and to Officer Roach. It also noted that the officers had given different accounts of the shootings, and that "it would seem more conspiratorial if all of the defendants' stories matched up in the details."
 
 
 42
 Thomas argues that summary judgment was improper because a genuine issue of material fact existed as to whether the officers had the opportunity to prevent Roach's use of excessive force. Citing Skorupski v. County of Suffolk, 652 F.Supp. 690, 694 (E.D.N.Y.1987), he points out that police officers have an affirmative duty to intervene and prevent the unlawful use of force by other officers in their presence. He contends that the officers' "tacit approval" of Roach's use of excessive force "raises the spectre of culpability under § 1985."
 
 
 43
 We affirm. As we stated in Powell v. Workmen's Compensation Board, 327 F.2d 131, 137 (2d Cir.1964), a plaintiff alleging a conspiracy under § 1985(3) must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy. Thomas has not alleged with any particularity the overt acts engaged in by the police officers. Instead, Thomas's assertions were conclusory and vague, and did not establish the existence of an agreement among the defendants to deprive Thomas of his constitutional rights. Summary judgment was therefore appropriate. See Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir.1977) ("[C]omplaints containing only 'conclusory,' 'vague' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed."); Mass v. McClenahan, 893 F.Supp. 225, 231 (S.D.N.Y.1995) ("Absent specific factual allegations as to the participation of a particular defendant in the conspiracy, plaintiff's § 1985(3) claim cannot survive a motion for summary judgment by that defendant."); Thornton v. City of Albany, 831 F.Supp. 970, 980 (N.D.N.Y.1993) (granting summary judgment on § 1985 claim in part because plaintiff's assertions of conspiracy were conclusory and vague).[3]
 
 
 44
 Moreover, even if Thomas had shown evidence of a conspiracy, he alleged no facts and presented no evidence that could have shown that the officers acted with class-based discriminatory animus. While there is no doubt that Thomas, who is black, is a member of a protected class, Thomas did not demonstrate that the officers selected their course of action because of his race. The defendants were entitled to summary judgment on this claim. See Herrmann v. Moore, 576 F.2d 453, 456-57 (2d Cir.1978) (affirming summary judgment in favor of defendants on § 1985(3) claim on grounds that plaintiff did not show discriminatory animus); Thornton, 831 F.Supp. at 980-81 (granting summary judgment on § 1985 claim in part because plaintiff did not show discriminatory animus).
 
 2. Claims Against The City of Bridgeport
 
 45
 We stated above that Thomas did not demonstrate that a municipal custom or policy was a motivating force behind the alleged constitutional deprivations, and affirmed the summary judgment in favor of the City of Bridgeport on Thomas's § 1983 claim. Thomas's inability to demonstrate that under § 1983 a genuine issue of material fact exists with regard to a City of Bridgeport policy or custom linked to the alleged constitutional deprivations precludes any § 1985(3) conspiracy claim against it based on the same allegations. See Carnegie, 811 F.Supp. at 914.
 
 D. Claims Under 42 U.S.C. § 1986
 
 46
 Section 1986 "provides a cause of action against anyone who 'having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so.' " Mian, 7 F.3d at 1088 (quoting Katz v. Morgenthau, 709 F.Supp. 1219, 1236 (S.D.N.Y.), aff'd in part and rev'd in part on other grounds, 892 F.2d 20 (2d Cir.1989)). Thus, a § 1986 claim must be predicated upon a valid § 1985 claim. See id. (citing Dacey v. Dorsey, 568 F.2d 275, 277 (2d Cir.1978)). Since the district court properly granted summary judgment on Thomas's § 1985(3) claims, the district court properly granted summary judgment for the defendants on Thomas's § 1986 claims. We therefore affirm on this issue.
 
 IV. CONCLUSION
 
 47
 For the above reasons, we vacate the district court's grant of summary judgment to the defendant police officers on the § 1983 claims. We affirm the summary judgment in favor of the City of Bridgeport on the § 1983 claim as well as the summary judgment in favor of all the defendants on the §§ 1985(3), 1986, and 1988 claims. Because we reinstate Thomas's federal claim, the judgment dismissing Thomas's pendent state law claims for lack of jurisdiction is vacated as well. His supplemental state law claims are therefore reinstated. We remand the case for further proceedings.
 
 
 
 *
 Honorable Denise Cote, U.S. District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Thomas contends that there may have been only one flashlight
 
 
 [2]
 See also F.R.E. 410 (stating that evidence of a plea of nolo contendere "is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions"); Refined Sugars Inc. v. Southern Commodity Corp., 709 F.Supp. 1117, 1120 (S.D.Fla.1988) ("[A] criminal defendant wishing to avoid the collateral effect of a guilty plea has the option of pleading nolo contendre in lieu of pleading guilty."); Lichon v. American Universal Ins. Co., 435 Mich. 408, 459 N.W.2d 288, 293 (Mich.1990) (holding that despite his arson conviction following a nolo contendre plea, building owner could sustain action against insurer for refusal to pay for building owner's losses; stating that "[t]he primary purpose of a plea of nolo contendere is to avoid potential future repercussions which would be caused by the admission of liability, particularly the repercussions in potential future civil litigation")
 
 
 [3]
 While Thomas correctly argues that police officers have a duty to prevent other officers from using excessive force, see O'Neill v. Krzeminski, 839 F.2d 9, 11-13 (2d Cir.1988); Skorupski, 652 F.Supp. at 694, this argument is relevant to his § 1983 claims against the individual officers. It is not relevant to his conspiracy claims