GAETANO & ASSOCIATES INC., a/k/a Gaetano, Diplacidi & Associates Inc., Petitioner–Cross–Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent–Cross–Petitioner.

Nos. 05–2261–ag, 05–3126–ag.

United States Court of Appeals, Second Circuit.

May 16, 2006.

Kevin J. Nash, Finkel Goldstein Rosenbloom & Nash, LLP, New York, N.Y., for the Petitioner.

Richard A. Cohen, Senior Attorney, National Labor Relations Board (Ronald Meisburg, General Counsel; John E. Higgins, Jr., Deputy General Counsel; John H. Ferguson, Associate General Counsel; Aileen A. Armstrong, Deputy Associate General Counsel; David Habenstreit, Supervisory Attorney; on the brief), Washington, D.C., for the Respondent.

PRESENT: Hon. WILFRED FEINBERG, Hon. SONIA SOTOMAYOR, Hon. PETER W. HALL, Circuit Judges.

## SUMMARY ORDER

Petitioner-cross-respondent Gaetano & Associates Inc. ("the Company") petitions for review of the April 25, 2005 decision and order of the National Labor Relations Board ("NLRB" or the "Board") finding that it violated § 8(a)(1), (3) and (5) of the National Labor Relations Act ("NLRA" or the "Act"), 29 U.S.C. § 158(a)(1), (3), (5). Respondent-cross-petitioner the NLRB cross-petitions for enforcement of its order. We assume the parties' familiarity with the facts of this case and the issues on appeal.

This case arises out of a unionization campaign by the carpenters' and laborers' unions at two of the Company's construction sites—a multi-family apartment building and a brownstone—in Northern Manhattan in the Spring of 2003. Following a hearing that took place on February 26 and 27 and March 1 and 5, 2004, Administrative Law Judge Raymond P. Green rendered a decision finding that the Company had violated NLRA § 8(a)(1), which prohibits interfering with employees' rights under the NLRA § 8(a)(3), which prohibits discrimination in hiring, firing or terms and conditions of employment to encourage or discourage membership in a labor organization, and § 8(a)(5), which prohibits an employer's refusal to bargain collectively with its employees' representative. *See In re Gaetano & Assocs. Inc.*, 344 NLRB No. 65, 2005 WL 986340, at *21–22 (N.L.R.B. Apr. 25, 2005). The Board adopted the ALJ's findings, *see id.* at *1, and made additional findings on incidents not specifically addressed by the ALJ, *id.* at *3–5. The Board adopted also the recommended remedial order of the ALJ, and ordered the Company to cease and desist from its unfair labor practices, offer to reinstate the employees whom it had laid off in response to union activity and otherwise make the parties whole. *See id.* at *5. The Company argues that the Board erred in its findings as a matter of law. We disagree.

Our review of NLRB orders is limited. "We must enforce the Board's order where its legal conclusions are reasonably based, and its factual findings are supported by substantial evidence on the record as a whole." *NLRB v. Katz's Delicatessen*, 80

F.3d 755, 763 (2d Cir.1996) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera*, 340 U.S. at 477, 71 S.Ct. 456 (alteration and internal quotation marks omitted). Moreover, we accept an ALJ's credibility determinations, as adopted by the NLRB, unless the testimony is "incredible or flatly contradicted by undisputed documentary testimony." *Katz's Delicatessen*, 80 F.3d at 763.

### 1. Mass Lay–Offs

■ The ALJ found, and the Board agreed, that the Company's April 16, 2003 mass lay-off of carpenters was motivated by anti-union animus and that the company would not have made the same decision absent the concerted activity and thus that the Company had violated NLRA § 8(a)(1) and (3), 29 U.S.C. § 158(a)(1) and (3). Contrary to the Company's argument, temporal proximity can be a sufficient basis from which to infer anti-union animus as a matter of law. *See NLRB v. Am. Geri–Care, Inc.*, 697 F.2d 56, 60 (2d Cir. 1982) (holding that an inference of anti-union animus is "proper when the timing of the employer's actions is 'stunningly obvious.'"); *NLRB v. Porta Sys. Corp.*, 625 F.2d 399, 404 (2d Cir.1980) (noting that the "abruptness of a discharge and its timing are persuasive evidence as to motivation" even where the employer proffers an economic justification (quotation marks omitted)). To the extent that the Company invites us to view the facts of the mass lay-off differently, we decline to do so. Here, the lay-off occurred at the end of the day on April 16, 2003, in the middle of the workweek on the same day that union representative Byron Schuler called the Company to inform it that its carpenters

sought to be represented by his union and the NLRB faxed the Company the union's petition for a representation election. Immediately after laying off a significant number of its carpenters on April 16, 2003, the Company hired two carpenters to work at the main site and hired three more carpenters to work at that site a week later. The ALJ credited the testimony of a number of employees that at least 20 percent of rough carpentry remained at the time of the lay-off. The testimony is neither so incredible as to defy the laws of nature nor contradicted by documentary evidence, and therefore we do not disturb the ALJ's finding. *See Katz's Delicatessen*, 80 F.3d at 763.

■ The Company argues further that the Board erred in finding it liable for an unfair labor practice under the two-part test of *Wright Line, A Division of Wright Line, Inc.*, 251 NLRB 1083, 1083–88, 1980 WL 12312 (1980), *enforced*, 662 F.2d 899 (1st Cir.1981), *as clarified by, Director, Office of Workers' Compensation Programs v. Greenwich Collieries*, 512 U.S. 267, 276–78, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994), because its actions were taken for economic reasons. It relies on cases such as *NLRB v. M.H. Brown Co.*, 441 F.2d 839 (2d Cir.1971), in which we found, on the basis of testimony and corroborating documentary evidence, substantial support for the employer's proffered business justification for lay-offs that occurred in close temporal proximity to protected activity. *See id.* at 843. The Company's reliance is misplaced, however, because it has failed to produce any documentation supporting its proffered economic justifications, and the ALJ found the testimony of the Company's principals inconsistent with its actions in hiring additional carpenters in April and May. In these circumstances, we find no error in the Board's rejection of the Company's affirmative defense.

## 2. Other Terminations

■ The Company next challenges the Board's finding that the Company terminated Paul Valle and Wendell Henderson on account of their support for the union. It asserts that the ALJ erred in rejecting its defense that Valle was terminated for poor workmanship and Henderson for insubordination. Here, the ALJ expressly credited the testimony of Valle and Henderson about the circumstances of their discharge. Moreover, although the Company presented documentary evidence to support its claim that Henderson had been fired for insubordination, it was disputed and, as the ALJ noted, not determinative of the events in question. Accordingly, we defer to the Board's factual findings. *See Holo–Krome Co. v. NLRB,* 947 F.2d 588, 594 (2d Cir.1991) (explaining that an ALJ's assessment of witness credibility must be considered in assessing the substantiality of the evidence); *see also Katz's Delicatessen,* 80 F.3d at 763 (explaining that " 'reversal based upon a factual question will only be warranted if, after looking at the record as a whole, we are left with the impression that no rational trier of fact could reach the conclusion drawn by the Board' ") (quoting *NLRB v. Albany Steel, Inc.,* 17 F.3d 564, 568 (2d Cir.1994)).

The Company challenges also the Board's conclusion that Davidson Plenty and Benedict Plentie were fired on account of their support for the union. For the reasons discussed above, we give due deference to the testimony of Plenty and Plentie, whom the ALJ expressly found to be credible, and whose testimony about what Company owner Steven Gaetano said to them when he saw them wearing pro-union shirts was uncontradicted. The Company asserts further that because the Company ran out of money to work on the brownstone and that Plentie and Plenty's work on the brownstone was not good enough to shift them to the main site, it has met its burden under *Wright Line* to show that it would have discharged the two carpenters for economic reasons. This argument, however, is foreclosed by the record, which provides substantial support for the Board's finding that there was still significant carpentry work remaining at the main construction site in July and that the two carpenters were qualified to do work at that location.

## 3. Anti–Union Animus in Sub–Contracting

■ The Company next contends that the Board erred in finding that anti-union animus was a substantially motivating factor in the Company's decision to sub-contract the window installation and related work because it relied on circumstantial evidence and the fact that the Company had committed other unfair labor practices. We disagree.

First, there is no prohibition on the Board's consideration of circumstantial evidence. *See NLRB v. G & T Terminal Packaging Co.,* 246 F.3d 103, 116 (2d Cir. 2001) ("The Board may consider direct or circumstantial evidence that an employee's protected activities motivated the employer's [response]. . . ."); *Pergament United Sales, Inc. v. NLRB,* 920 F.2d 130, 139 (2d Cir.1990) ("Intent is subjective and in many cases can be proved only by the use of circumstantial evidence. In analyzing the evidence, circumstantial or direct, the Board is free to draw any reasonable inference." (alteration and internal quotation marks omitted)). Second, the Board only noted the existence of other unfair labor practices in concluding that the circumstances of the outsourcing gave rise to an inference of anti-union animus. There is substantial evidence supporting the Board's conclusion; namely, that the Com-

pany's decision to subcontract the window installation was a departure from its policy, adopted in 1998, to use its employees to perform as much of the construction work as possible; that the Company knew of the employees' union activity; and that the Company's numerous unfair labor practices in response to the union campaign gave rise to the inference that the decision to subcontract soon after the employees engaged in protected activity was motivated by anti-union animus.

The Company asserts also that the Board's finding of anti-union animus is undermined by the evidence of economic justification that it presented, but the Board expressly found the testimony on this subject contradictory, and we do not disturb its finding here.

### 4. Coercion

■ Finally, the Company argues that the Board erred in concluding that its use of a petition that asked employees to indicate that they were employees of the company and not a member of the union constituted improper coercive interrogation of the employees. Here, the interrogation occurred after a mass lay-off of carpenters, the Company sought information about particular employees, and the employees were asked to sign the document by Patrick Lewis, a foreman. We have no difficulty concluding that there is substantial evidence supporting the Board's determination that the petition constituted an unfair labor practice. *See Bourne v. NLRB,* 332 F.2d 47, 48 (2d Cir.1964) *(per curiam)* (laying out the factors to be considered in determining whether interrogation constitutes an unfair labor practice); *see also Abbey's Transp. Servs., Inc. v. NLRB,* 837 F.2d 575, 578–79 (2d Cir.1988) (concluding that interrogation about whether particular employees had signed union authoriza-

tion cards by the employer's agent constituted unlawful interrogation).

### 5. Other Claims

■ In its reply brief, the Company asserts that the Board erred in finding that it unlawfully refused to bargain with the newly-elected carpenters' union. Because the Company failed to raise this argument in its opening brief, we deem it waived. *See Thomas v. Roach,* 165 F.3d 137, 145 (2d Cir.1999) (holding that an argument raised for the first time in a reply brief is waived).

■ Also for the first time on appeal, the Company argues in its reply brief that the Board's order is futile because the Company is no longer actively involved in other construction projects. The Company has waived this argument by failing to raise it in its opening brief. *See id.* Even if the claim were not waived, however, we would not address it here. There is no evidence in the record about the Company's current status as an employer or what it means by "active involvement." In these circumstances, it is appropriate to leave it to the Board to determine through its compliance proceedings whether the Company is able to comply with the provisions of the remedial order. *See NLRB v. Haspel,* 228 F.2d 155, 156 (2d Cir.1955) *(per curiam)* (leaving the question of enforcement for compliance proceeding where respondent claimed on appeal that it had gone out of business); *Cap Santa Vue, Inc. v. NLRB,* 424 F.2d 883, 886 (D.C.Cir.1970) (same); *see also NLRB v. Globe Sec. Servs., Inc.,* 548 F.2d 1115, 1117 (3d Cir.1977) (discussing cases in which courts had declined to consider an order moot because there was insufficient evidence that the company to which it was directed had gone out of business).

\*　　\*　　\*　　\*　　\*　　\*

We have considered the Company's remaining arguments and find them to be without merit. The Company's petition for review is denied and the NLRB's cross-petition for enforcement is granted.