Gabriel MILLS, Plaintiff–Appellant,

v.

FENGER, Lt., individually and in his official capacity, D. Dill, Det., individually and in his official capacity, and Hassett, Det., individually and in his official capacity, Defendants–Appellees.

No. 03–0048–PR.

United States Court of Appeals, Second Circuit.

Dec. 26, 2006.

Scott Grant, David Rosen & Associates, New Haven, CT, (David N. Rosen, on the brief), for Appellant.

Timothy Ball, Corporation Counsel, City of Buffalo Law Department, Buffalo, NY, (Lisa M. Yaeger, on the brief), for Appellees.

Present: SONIA SOTOMAYOR, BARRINGTON D. PARKER, Circuit Judges and MARK R. KRAVITZ, District Judge.*

### SUMMARY ORDER

Plaintiff-appellant Gabriel Mills appeals from the January 6, 2003 judgment of the district court granting summary judgment to defendants Lieutenant Fenger, Detective Dill, and Detective Hassett (the "officers") on Mills's claims of excessive force and denial of medical care, which he brought pursuant to 42 U.S.C § 1983. *Mills v. Fenger*, No. 98–cv–0034E, 2003 WL 251953 (W.D.N.Y. Jan.3, 2003). We assume the parties' familiarity with the underlying facts of the case, its procedural history and the arguments on appeal.

Mills claims that the officers used excessive force at three separate points during his arrest. First, Mills challenges the level of force Dill used upon their initial encounter in the bedroom of his apartment. According to Mills, after Dill informed him he was under arrest, Mills stood up from the bed but did not resist in any way. Mills alleges that Dill then "grabbed [him] and lifted [him] and [they] both fell to the floor" or "grabbed [him] and threw [him] down" with enough force to rupture his patellar tendon. Dill, by contrast, contends that as he entered the bedroom, Mills jumped on him from behind the door and tackled him, and that Dill—soon joined by Hassett and Fenger—then struggled to subdue Mills.

When considering a government official's qualified immunity claim, we ask first whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). We analyze claims of excessive force arising in the context of an arrest under the Fourth Amendment's objective reasonableness test, paying "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 394, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Accepting Mills's account that he merely stood up but did not resist in any way, we cannot say that, even if Dill believed Mills may have been armed, the level of force Dill used was reasonable as a matter of law. *See, e.g., Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir.2003) (stating that plaintiff may prevail on excessive force claim "if he is able to show that [the officer] used more force than was necessary to subdue him").

■ The officers claim that even if the force used was excessive, they are nonetheless entitled to qualified immunity because they did not violate any "clearly established" right, *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. "The right of an individual not to be subjected to excessive force has long been clearly established." *Calamia v. New York*, 879 F.2d 1025, 1036 (2d Cir.1989). Because whether force is excessive turns on its reasonableness, we have held that "[s]ummary judgment on qualified immunity grounds is not appro-

* The Honorable Mark R. Kravitz, United States District Judge for the District of Connecticut, sitting by designation.

priate when there are facts in dispute that are material to a determination of reasonableness." *Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999); *see also Kerman v. City of New York,* 261 F.3d 229, 239 (2d Cir.2001) (reversing grant of judgment as a matter of law on excessive force claim because "the contrasting accounts ... present factual issues as to the degree of force actually employed and its reasonableness"). Because the parties' accounts differ on the important questions of whether Mills resisted arrest and whether his actions threatened the officer or required the force used, summary judgment on qualified immunity is inappropriate.

Second, Mills alleges that excessive force was used when the officers dragged him down three flights of stairs by pulling on the handcuffs they had used to fasten his hands in front of him. The officers, for their part, assert that Mills walked down the stairs of his own accord. The district court found that even under Mills's version of events, the officers were justified in dragging Mills down the stairs because of the "unpredictable environment" and Mills's "uncooperativeness." *Mills,* 2003 WL 251953, at *3 n. 16. In doing so, however, the district court improperly failed to credit Mills's claim that he was physically unable to walk, and imputed to the officers a perceived threat to their safety from other individuals in the apartment without any testimony to that effect from the offi-

cers themselves (indeed, the officers' testimony that Mills walked down the stairs on his own would support the opposite inference). In light of Mills's account that he had informed the officers of his injury, offered to hop down the stairs on one leg, and was later assisted by the officers in hopping from the building to the patrol car, we cannot conclude that it was reasonable, as a matter of law, for the officers to have dragged Mills down three flights of stairs by his handcuffs. *See Kerman,* 261 F.3d at 233, 239–40 (finding judgment for defendants as a matter of law on excessive force claim inappropriate when arresting officers, *inter alia,* dragged unresisting man up stairs and removed him from building in a restraint bag). And as with the previous incident, factual disputes "as to the degree of force actually employed and its reasonableness," *id.* at 239, including a dispute about whether any force was used at all, preclude the grant of summary judgment.

Third, Mills claims that Dill used excessive force when he pointed a gun to Mills's head and said, "I ought to blow your brains out and save these taxpayers money." In his deposition, however, Mills said only that he "remember[ed] [Dill] taking the gun and" making the comment. Circuit law could very well support Mills's claim that a gunpoint death threat issued to a restrained and unresisting arrestee represents excessive force;[1] however, giv-

---

1. *See, e.g., DiSorbo v. Hoy,* 343 F.3d 172, 184 (2d Cir.2003) (stating that a jury could reasonably find and award damages for psychological injuries in an excessive force case, though finding the award excessive in that case); *Kerman,* 261 F.3d at 232, 239–40 (finding that officers' name-calling and threat to "blow [arrestee's] brains out" amounted to "verbal abuse [and] humiliation" which "might well be objectively unreasonable and therefore excessive"); *see also Robison v. Via,* 821 F.2d 913, 923 (2d Cir.1987) (stating that "whether the constitutional line has been

crossed depends on such factors as ... whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm" (internal quotation marks omitted)). For cases in other circuits, see *Robinson v. Solano County,* 278 F.3d 1007, 1015 (9th Cir.2002) (stating that "brandishing a cocked gun" in front of an individual's face lays "the building blocks for a section 1983 claim" even in the absence of physical injury); *Jacobs v. City of Chicago,* 215 F.3d 758, 774 (7th Cir.2000) ("[H]olding [a] gun to a per-

en the lack of a factual predicate for the claim that the gun was pointed at Mills's head and the resulting vagueness as to what precisely Dill did with the gun, we cannot find that the comment was sufficiently threatening to constitute excessive force.

■ Finally, Mills claims that the officers unconstitutionally denied him medical care for his ruptured patellar tendon. When such claims arise in the course of pretrial arrest and detainment, we evaluate them under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996). To prevail on such a claim, a plaintiff must demonstrate: (1) that an official "denied [him] treatment needed to remedy a serious medical condition," and (2) that the official did so "because of his deliberate indifference to that need." *Id.*

Unlike the district court, we cannot conclude as a matter of law that a ruptured patellar tendon is not a "serious medical condition." In the Eighth Amendment context,[2] we have defined a "sufficiently serious" injury to include one which causes "extreme pain," *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (internal quotation marks omitted), and have explained that we may consider a number of factors when determining if a condition is serious enough, including: "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain," *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (internal quotation marks omitted). Based on Mills's testimony about the pain he experienced, the undisputed fact that he received surgery for a ruptured patellar tendon, and generally available medical information,[3] we conclude that he has at least created a genuine issue of fact with respect to the first prong of the test set forth in *Weyant.*

To establish deliberate indifference, Mills must show "something more than mere negligence; but proof of intent is not required." *Weyant,* 101 F.3d at 856 (internal quotation marks omitted). Though it is not clear in the Fourteenth Amendment context whether a plaintiff must show subjective awareness of the condition on the part of the official or may rely on an objective standard, in either case "the state of the defendant's knowledge is normally a question of fact to be determined after trial." *Id.* Mills has presented adequate evidence to create a triable issue of fact as to the officers' subjective awareness of his injury: his testimony that he could not stand or walk (a symptom medically consistent with a ruptured patellar tendon), his claims that he repeatedly in-

son's head and threatening to pull the trigger is a use of deadly force.").

**2.** The rights of pretrial detainees like Mills, whose claims for denial of medical care we analyze under the Fourteenth Amendment, "are at least as great as those of a convicted prisoner," *Weyant,* 101 F.3d at 856, whose rights we analyze under the Eighth Amendment.

**3.** *See* Christopher Anunziata, *Patellar Tendon Rupture* (Dec. 22, 2002), http://www.emedicine.com/Orthoped/topic246.htm (de-

scribing this injury as "extremely disabling," and stating that it is associated with "immediate disabling pain," "an immediate pop or tearing sensation, immediate swelling and difficulty rising and bearing weight"). While this widely available, basic information is sufficient to defeat a motion for summary judgment on this point, we note that, at trial, Mills likely will need to develop his medical testimony further. We commend the district court to re-appoint pro bono counsel to assist him in that undertaking.

formed the officers of his injury, the written comment of his arraigning judge that he "NEEDS MEDICAL ATTENTION," and the undisputed fact of his injury. Further, defendants are not entitled to qualified immunity because a pretrial detainee's right not to be recklessly denied treatment for a serious medical condition was "clearly established" at the time these events transpired. *See, e.g., Liscio v. Warren*, 901 F.2d 274, 276–77 (2d Cir. 1990).

For the foregoing reasons, the judgment of the district court is VACATED and REMANDED for proceedings not inconsistent with this order.