**Dennis R. CARNEGIE, Plaintiff,**

v.

**Robert J. MILLER, New York City Housing Authority, City of New York, John Miller, and Port Authority of New York and New Jersey, Defendants.**

**No. 86 Civ. 8658 (KMW).**

United States District Court,
S.D. New York.

Jan. 12, 1993.

Martin Block, Sanders, Sanders & Block, P.C., Mineola, NY, for Dennis R. Carnegie.

Gary A. Tomei, New York City, for Robert J. Miller.

Wayne Schafer, Axelrod, Cornachio & Famighetti, Mineola, NY, for John Miller.

Bruce A. Jackson, Jackson, Krez & Consumano, New York City, for New York City Housing Auth.

Milton H. Pachter, Joel M. Graham, New York City, for John Miller and Port Authority of New York and New Jersey.

## ORDER

KIMBA M. WOOD, District Judge.

 In a Report and Recommendation dated December 3, 1992, Magistrate Judge Grubin recommended that I grant defendants New York City Housing Authority's and Port Authority of New York and New Jersey's Motions for Summary Judgment. In conformity with *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir.1989), the Magistrate's Report explicitly cautioned that failure to file timely objections could constitute a waiver of those objections. No objections have been received. I therefore accept and adopt the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (failure to file timely objections constitutes waiver of objections, and district court review not required); *cf. Small*, 892 F.2d 15 (*Arn* applies even to *pro se* litigants where Report contains proper cautionary language).

Summary judgment is hereby granted to defendant New York City Housing Authority and to defendant Port Authority of New York and New Jersey. The remaining parties shall be ready for trial one week from the issuance of this order.

SO ORDERED.

## REPORT AND RECOMMENDATION TO THE HONORABLE KIMBA M. WOOD

GRUBIN, United States Magistrate Judge:

In this action brought pursuant to 42 U.S.C. §§ 1983 and 1985, plaintiff Dennis R. Carnegie alleges that his rights under the United States Constitution and the New York common law were violated in connection with his arrest November 16, 1985. Pending are the motions for summary judgment of defendant New York City Housing Authority ("NYCHA") and defendant Port Authority of New York and New Jersey. As explained below, I respectfully recommend that your Honor grant their motions. If you adopt this recommendation, the two individual defendants would remain in the action. As all parties have submitted their pretrial order, proposed *voir dire* and requests to charge, the case can be set down for trial upon your decision on the instant motions.

## BACKGROUND

For the purpose of these motions, I have construed all facts and drawn all inferences in favor of plaintiff. On the evening of November 15, 1985, Port Authority police officer John Miller ("John") and his brother NYCHA police officer Robert J. Miller ("Robert") attended a benefit for the family of a deceased Port Authority police officer at One World Trade Center. Each was out of uniform and off-duty at that time. They left after six hours there, at approximately 2:00 a.m., and Robert went to get his brother's car. At the concourse level, John observed two men about 25 to 30 yards away struggling over possession of a briefcase. One grabbed the briefcase and, after John yelled, ran from the building. John ran after him, passed Robert standing by the car outside One World Trade Center and told him that the man he was chasing had robbed someone. Robert then got in the car and pursued the man. In the vicinity of Trinity Place and Rector Street, Robert got out of the car and approached plaintiff.

Plaintiff maintains that he had nothing to do with the briefcase grabbing and that he had been working at his job at Automatic Data Processing at 14 Wall Street and had left to get something to eat when Robert confronted him. Plaintiff claims that Robert thereupon attempted to frisk him, asked him for identification but did not identify himself as a police officer, threw him to the ground and repeatedly struck him with the butt of a gun on the back of his head.

Robert detained plaintiff until a New York City Police Department vehicle arrived at the scene. With plaintiff handcuffed inside the vehicle, John was asked whether plaintiff was the man he had been chasing, and he identified him affirmatively. Plaintiff was then taken to the First Precinct station house and charged with the crimes of petit larceny and resisting arrest. Later that morning, plaintiff was treated at the Beekman Downtown Hospital emergency room and received approximately ten stitches for his wounds. He was kept in custody until his arraignment the following day. No further prosecution of the charges was undertaken, and they were dismissed on March 13, 1986.

On November 12, 1986, plaintiff commenced this action for compensatory and punitive damages against the two officers, NYCHA, the City of New York, and the Port Authority. On its uncontested motion, a judgment dismissing the complaint against the City of New York was entered on January 16, 1987. Plaintiff asserts four claims: (1) defendants arrested him without probable cause and used excessive force against him depriving him of his rights under the Fourth, Fifth, Eighth and Fourteenth Amendments in violation of 42 U.S.C. § 1983; (2) by means of their false arrest and imprisonment of him and their "malicious" charges, defendants conspired to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985(3); (3) defendants John and Port Authority are liable to plaintiff under 42 U.S.C. § 1986 because John did nothing to prevent plaintiff's arrest and imprisonment although he was aware the charges were false; and (4) defendants are liable to plaintiff for the common law torts of assault and battery, false arrest and imprisonment, and malicious prosecution. Defendants NYCHA and Port Authority have moved for summary judgment essentially on the grounds that they cannot be held liable under §§ 1983, 1985 and 1986 because there is insufficient evidence of an official policy or custom linked to the alleged constitutional deprivations and that this court has no pendent party jurisdiction over them on plaintiff's state law claims.

## DISCUSSION

### I.

Under Rule 56(c) of the Federal Rules of Civil Procedure a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir.1988); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). But the court is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative, *id.* at 249–50, 106 S.Ct. at 2510–11; *Knight v. U.S. Fire*

*Ins. Co.*, 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). To determine whether the nonmoving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.*, but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion. *See, e.g., Knight v. U.S. Fire Ins. Co.*, 804 F.2d at 11–12.

Once the nonmoving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to satisfy his or her ultimate burden under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. at 330 & n. 2, 106 S.Ct. at 2556 & n. 2 (Brennan, J., dissenting). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)); *see also Weg v. Macchiarola*, 654 F.Supp. 1189, 1191–92 (S.D.N.Y.1987).

## II.

In *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality is subject to damages liability under § 1983 for the unconstitutional acts of its employees. *Id.* at 690, 98 S.Ct. at 2035. Such liability cannot, however, result merely from a theory of respondeat superior. *Id.* at 691–94, 98 S.Ct. at 2036–37. It can be imposed only if the acts in question were carried out in "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694, 98 S.Ct. at 2037. *See City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478–80, 106 S.Ct. 1292, 1297–98, 89 L.Ed.2d 452 (1985); *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981) (policy must be the "moving force of the constitutional violation"); *Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir.1992). Nor may the existence of an "official policy" be inferred merely from a single incident unless the challenged act is one that municipal policymakers have "officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. at 480, 481, 106 S.Ct. at 1298, 1298. *See also Walker v. City of New York*, 974 F.2d at 296–97 (discussion of *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Pembaur v. City of Cincinnati;* and *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)); *Anderson v. City of New York*, 657 F.Supp. 1571, 1574–75 (S.D.N.Y.1987).

In *City of Canton v. Harris*, the Supreme Court held that inadequate police training may constitute a city "policy or custom" that is actionable under § 1983 "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into conduct." 489 U.S. at 388, 109 S.Ct. at 1204. An unconstitutional action by a police officer does not, by itself, signify that the training program he received was inadequate, much less that any inadequacy that did exist was the result of a city's deliberate indifference. "[P]lainly, adequately trained officers occasionally make mistakes; the fact they do says little about the training program or the legal basis for holding the city liable." *Id.* at 391, 109 S.Ct. at 1206. In addition to identifying a deficiency in a city's training program that

is relevant to "the usual and recurring situations with which [officers] must deal," the plaintiff must also show that it is "closely related to the ultimate injury." *Id.* The factfinder must decide: "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *Id.*

A municipality may also be held liable where its failure to supervise or discipline its officers amounts to a policy of deliberate indifference. *Fiacco v. City of Rensselaer,* 783 F.2d 319, 326 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983); *Turpin v. Mailet,* 619 F.2d 196, 201–02 (2d Cir.), *cert. denied sub nom. Turpin v. City of West Haven,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). With particular reference to claims of police brutality, the Second Circuit has held that a city may be held liable under § 1983 if it were "knowingly and deliberately indifferent to the possibility that its police officers were wont to use excessive force and that this indifference was demonstrated by [its] failure ... to exercise reasonable care in investigating claims of police brutality in order to supervise the officers in the proper use of force." *Fiacco v. City of Rensselaer,* 783 F.2d at 326. *See Marcel v. City of New York,* No. 88 Civ. 7017 (LLS), 1990 U.S. Dist. Lexis 4094 at *21, 1990 WL 47689 at *8 (S.D.N.Y. Apr. 10, 1990). The Second Circuit only two months ago reviewed and reaffirmed these requirements for a claim that a municipality's failure to train or supervise constitutes deliberate indifference. *See generally Walker v. City of New York,* 974 F.2d 293.

Plaintiff alleges that his arrest without probable cause and the use of excessive force against him were the result of "inadequate and insufficient training and super-

vision" of the defendant officers by NYCHA and the Port Authority, which "still is part of [their] prevailing common practice and custom ... in regard to their training of police officers." Amended Complaint ¶¶ 13, 14, 17, 18. Plaintiff also alleges that NYCHA and the Port Authority

> failed to promulgate rules and regulations to insure that their police officers, including [the defendant officers], would properly exercise their authority and power and failed to properly review the [defendant officers'] conduct ... or to discipline them so as to prevent the illegal and abusive conduct set forth herein.

*Id.* ¶ 19.

NYCHA and the Port Authority[1] maintain that they are entitled to judgment as a matter of law under § 1983 because there is no evidence in the record that the alleged acts by Robert and John resulted from an official policy or custom. NYCHA argues that there is no evidence in the record supporting plaintiff's claims that its training and supervision of Robert were inadequate or that it failed to discipline him or to promulgate necessary rules and regulations. It also puts forward the following evidence to show that its training and supervision of him were not inadequate. He was provided 5 months of training at the NYCHA Police Academy and 5½ months of courses at John Jay College. As part of this training, he took courses in law, police science, social science and physical education. Exs. S and I at 1.[2] According to a lieutenant in the NYCHA Police Academy Training Unit, its officers are instructed "to use the minimum amount of force to effect an arrest" and their training "in identifying perpetrators of crimes stresses probable cause." Ex. S. Apart from an administrative complaint based on the incident involving plaintiff, which is still pending determination, Robert was exonerated on the only other complaint that has ever

---

1. It is not disputed that the Port Authority is subject to liability under § 1983 under *Monell* and "is not a state agency for Eleventh Amendment purposes." *Feeney v. Port Auth. Trans–Hudson Corp.,* 873 F.2d 628, 630 (2d Cir.1989), *aff'd,* 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990).

2. "Ex. ___" refers to attachments to the affidavit of Bruce A. Jackson, Esq., submitted in support of NYCHA's motion.

been lodged against him. Exs. I at 2 and R. Concerning John's training and supervision, the Port Authority points out that the parties have agreed that he attended the New York City Transit Authority Police Academy for 5½ months and the Port Authority Police Academy for 16 weeks, and that the Port Authority has not received any complaints concerning his conduct.

In rebuttal, apart from a recitation of the incident at issue, plaintiff has come forward with no documents, admissions, testimony or evidence of any kind pertaining to the officers' training and supervision by NYCHA and the Port Authority. Alluding to deposition testimony that each officer had consumed approximately three glasses of beer that evening, plaintiff argues that "proper training and instruction would have instructed the defendants that their ability to function as police officers would be impaired after consuming alcoholic beverages." Plaintiff also contends that "defendants should have been trained on less injurious methods of restraining [an] alleged perpetrator[ ] who [has] not exhibited signs of threat" than by striking him "on the back of the head with the butt of a gun while he was face down on the ground."

> Not a month goes by in which there is not a complaint of police violence and excessive force noted in the news. With such notice by the media, and by complaints lodged against police authority, it can only be a deliberate indifference to civilians['] rights why police officers are not trained in more efficient manners.

Plaintiff's Memorandum of Law, p. 12.

However, plaintiff has produced no evidence regarding the officers' training on the consumption of alcohol, the use of force, or any other aspect of their responsibilities. He has simply assumed on the basis of the events at issue both that the training of the two officers was inadequate and that this inadequate training was the "moving force," *Polk County v. Dodson*, 454 U.S. at 326, 102 S.Ct. at 454, of the officers' allegedly unconstitutional behavior. Each assumption is question-begging. *See City of Canton v. Harris*, 489 U.S. at

391, 109 S.Ct. at 1206. Under plaintiff's argument, inadequate training would always be inferred merely from the fact that a constitutional deprivation by a police officer occurred. "Such an approach provides a means for circumventing *Monell*'s limitations altogether." *City of Oklahoma v. Tuttle*, 471 U.S. at 823, 105 S.Ct. at 2436 (Rehnquist, C.J., plurality opinion). As Justice Brennan stated in the same case:

> [W]ithout some evidence of municipal policy or custom independent of the police officer's misconduct, there is no way of knowing whether the city is at fault. To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*.

*Id.* at 831, 105 S.Ct. at 2440 (Brennan, J., concurring in part and concurring in the judgment). *See also Edwards v. City of New York*, 692 F.Supp. 1579, 1581–83 (S.D.N.Y.1988); *Camarano v. City of New York*, 624 F.Supp. 1144, 1146 (S.D.N.Y. 1986).

In sum, in the face of defendants' evidence of training received by the two officers and the lack of any need to have disciplined them given the absence of prior complaints, plaintiff has come forward with nothing but conclusory argument. He has, accordingly, failed to meet his burden of coming forward with specific facts showing that there is any genuine issue for trial as to whether a "policy or custom" of the NYCHA or the Port Authority was responsible for the constitutional deprivations he has alleged. NYCHA and the Port Authority should therefore be granted summary judgment on plaintiff's first claim.

### III.

The only bases indicated in the amended complaint for including NYCHA in plaintiff's claim under § 1985(3) and the Port Authority in plaintiff's claims under §§ 1985(3) and 1986 are those offered in support of plaintiff's claims against them under § 1983: that the two officers were acting within the scope of their employment and that NYCHA and the Port Au-

thority provided them inadequate training and supervision. *See* Amended Complaint ¶¶ 26, 27, 29–31, 33–34. However, as with § 1983, a municipality may not be held vicariously liable under a theory of respondeat superior for claims arising under § 1985(3), and plaintiff's inability to demonstrate that under § 1983 a genuine issue of material fact exists with regard to the existence of a NYCHA or Port Authority policy or custom linked to the alleged constitutional deprivations precludes any § 1985(3) conspiracy claim against them based on the same allegations. *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir.), *cert. denied*, 493 U.S. 817, 110 S.Ct. 69, 107 L.Ed.2d 36 (1989); *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir.), *cert. denied sub nom. County of Nassau v. Owens*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Studifin v. New York City Police Dep't*, No. 86 Civ. 5557 (WCC), 1991 U.S. Dist. Lexis 4579 at *13, 1991 WL 60379 at *3 (S.D.N.Y. Apr. 8, 1991); *Felix v. City of New York*, No. 89 Civ. 2410 (JSM), 1990 U.S.Dist. Lexis 13529 at *6–7, 1990 WL 160904 at *2 (S.D.N.Y. Oct. 9, 1990); *Auriemma v. City of Chicago*, 747 F.Supp. 465, 476 (N.D.Ill.1990), *aff'd sub nom. Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992); *Martin v. City of New York*, 627 F.Supp. 892, 898 (E.D.N.Y.1985). Furthermore, absent a viable § 1985 claim against the Port Authority, plaintiff's "neglect to prevent" claim against it under § 1986 must also fail. *Jews for Jesus, Inc. v. Jewish Community Relations Council*, 968 F.2d 286, 292 (2d Cir.1992); *Mahoney v. Nat'l Org. for Women*, 681 F.Supp. 129, 135 (D.Conn.1987); *Port Chester Yacht Club, Inc. v. Iasillo*, 614 F.Supp. 318, 322–

23 (S.D.N.Y.1985). The pending motions should therefore be granted on plaintiff's second and third claims.

## IV.

There being no diversity of citizenship between plaintiff, a New York resident, and defendants NYCHA and Port Authority, dismissal of plaintiff's claims under §§ 1983, 1985(3) and 1986 against these defendants would leave this court without jurisdiction over plaintiff's pendent state law tort claims against them. Sections 1983 and 1985 and 28 U.S.C. § 1343(a) (granting federal courts jurisdiction over §§ 1983 and 1985 claims) each lack the necessary affirmative grant of pendent party jurisdiction. Pendent party jurisdiction is available only if the statute providing federal jurisdiction over the primary claim can be interpreted as specifically conferring jurisdiction over added claims involving added parties over whom no independent basis of jurisdiction exists. *Finley v. United States*, 490 U.S. 545, 551–56, 109 S.Ct. 2003, 2007–10, 104 L.Ed.2d 593 (1990); *Powell v. Gardner*, 891 F.2d 1039, 1047 (2d Cir.1989); *Kaufman v. City of New York*, No. 87 Civ. 4492 (RO), 1992 U.S.Dist. Lexis 14049 at *4 n. 2, 1992 WL 247039 at *1 n. 2 (S.D.N.Y. Sept. 16, 1992); *Reid v. City of New York*, 736 F.Supp. 21, 27 (E.D.N.Y. 1990); *Otero v. Jennings*, No. 86 Civ. 2400 (RWS), 1989 U.S.Dist. Lexis 6697 at *2–4, 1989 WL 67215 at *1–2 (S.D.N.Y. June 14, 1989).[3] The pending motions should therefore be granted on plaintiff's fourth claim.[4]

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the motions for summary

---

**3.** Plaintiff cites *Raysor v. Port Auth.*, 768 F.2d 34 (2d Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986), as an example of pendent party jurisdiction over state law claims following dismissal of a § 1983 claim, *see id.* at 38, but the issue of pendent party jurisdiction was not addressed there, and the case was, in any event, decided five years before *Finley v. United States*.

Congress responded to *Finley v. United States* by enacting the Judicial Improvements Act of 1990, Pub.L. No. 101–650, Title III, § 310(a), 104 Stat. 5113 (1990), codifying the courts' "supplemental jurisdiction" at 28 U.S.C. § 1367. *See Loeber v. Bay Tankers, Inc.*, 924 F.2d 1340, 1345

(5th Cir.), *cert. denied sub nom. Loeber v. United States*, —— U.S. ——, 112 S.Ct. 78, 116 L.Ed.2d 51 (1991); *Estate of Bruce v. City of Middletown*, 781 F.Supp. 1013, 1015 (S.D.N.Y.1992); *Colgan v. Port Auth.*, No. 91 Civ. 1136 (JRB), 1991 U.S. Lexis 12610 at *6–7, 1991 WL 180384 at *3 (E.D.N.Y. Aug. 14, 1991). This enactment has no bearing on the instant action, however, because it applies only to actions commenced on or after December 1, 1990. Pub.L. No. 101–650, § 310(c).

**4.** Citing *Duckworth v. Franzen*, 780 F.2d 645 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986), plaintiff argues

judgment of defendant NYCHA and defendant Port Authority be granted.

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Kimba M. Wood, to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Wood. *See* 28 U.S.C. § 636(b)(1); Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure; *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir. 1992); *Small v. Sec'y of HHS,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (per curiam).

Dated: December 3, 1992

that dismissal of the pendent state law claims should be conditioned on defendants' agreement not to raise a statute of limitations defense in state court. Such a condition is not necessary in view of the protection afforded plaintiff by N.Y.Civ.Prac.L. & R. § 205(a) (McKinney 1990) (allowing commencement of new action upon same transaction(s) or occurrence(s) within six months after dismissal of timely initial complaint on such grounds as lack of subject matter jurisdiction). *See Diffley v. Allied–Signal, Inc.,* 921 F.2d 421, 424 (2d Cir.1990); *Dunton v. County of Suffolk,* 729 F.2d 903, 911 n. 8 (2d Cir.1984); *compare Duckworth v. Franzen,* 780 F.2d at 656–57.