Annie THOMAS, Plaintiff,

v.

NORTHERN TELECOM, INC., Defendant.

Civil No. 1:00CV00505.

United States District Court, M.D. North Carolina.

Oct. 11, 2000.

629

Anita Beane Hunt, Durham, NC, for plaintiff.

Frank Pelouze Ward, Jr., Maupin Taylor & Ellis, P.A., Raleigh, NC, for defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This matter is before the court on a partial motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure brought by Defendant Northern Telecom, Inc.[1] ("Nortel"). In her complaint, Plaintiff Annie Thomas claims that Nortel discriminated against her due to race and disability. Plaintiff also alleges

---

1. According to Defendant's pleadings, it was formerly known as Northern Telecom, Inc., but is currently known as Nortel Networks, Inc. The court will refer to Defendant as Nortel.

that Nortel terminated her employment in retaliation for contacting the Equal Employment Opportunity Commission ("EEOC") to complain about this discrimination.

Plaintiff's complaint asserts four federal claims. These include violations of (1) the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); (2) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (3) 42 U.S.C. § 1985 ("Section 1985"); and (4) 42 U.S.C. § 1981 ("Section 1981"). Plaintiff also alleges supplemental state law claims for intentional infliction of emotional distress and negligent infliction of emotional distress. For the following reasons, Defendant's partial motion to dismiss will be granted in part and denied in part.

## FACTS[2]

Plaintiff, an African–American woman, worked intermittently on Defendant's assembly line from 1991 until January 1998, when she was terminated. In 1995, Plaintiff injured both of her shoulders while at work. After corrective surgery, Plaintiff returned to work in January 1997. Upon returning to work, Plaintiff's physician instructed her to go to physical therapy any time she experienced shoulder pain. Defendant's work site has a physical therapy center. The physician also recommended that Plaintiff be assigned to an assembly line position requiring minimal physical exertion. Despite the physician's instructions, Plaintiff was allowed to attend physical therapy only after receiving permission from her supervisor. Plaintiff alleges that several white employees were permitted to attend physical therapy without having to get supervisor permission and that they were allowed to stay at physical therapy as long as necessary. In addition, Plaintiff was originally assigned to a job on the assembly line requiring repetitive lifting and twisting movements. She received a new assignment to a less physically demanding job only after complaining to her supervisor.

In April 1997 Defendant's company physician diagnosed Plaintiff with a permanent partial disability rating of 15% in her right arm and 20% in her left arm. The physician advised her not to lift more than twenty pounds and to avoid repetitive movements.

While on disability leave in July 1997, Plaintiff stopped receiving disability insurance payments. When Plaintiff inquired why she was not getting paid, she discovered that Defendant had not been submitting the required paperwork to the insurance carrier.

When Plaintiff returned to work in late 1997, her position on the assembly line involved labeling computer boards. On November 7, 1997, a group of Nortel supervisors, nurses, and managers told Plaintiff that she had to label 650 boards per day or that she would face termination. Plaintiff claims that she was given this ultimatum even though fewer than 650 computer boards came down the assembly line daily. Plaintiff further alleges that, although her target volume of boards per day was later reduced, Defendant continued to insist that she label more computer boards than any of her co-workers. According to Plaintiff, this discriminatory treatment continued even after she complained to the Human Resources Department. Plaintiff's complaint states that the mistreatment culminated on November 19, 1997, when "a supervisor ... told the oth-

---

**2.** At this stage of the proceeding, the court accepts all Plaintiff's well-pleaded allegations as true.

er employees to find something else to do, because only the Plaintiff will have to complete 400 boards." (Pl.'s Compl. ¶ 20).

On January 2, 1998, Plaintiff contacted the EEOC. Plaintiff's complaint to the EEOC alleged discrimination based on race and disability. Defendant fired Plaintiff on January 19, 1998. Plaintiff alleges that Defendant fired her in retaliation for exercising her federal civil rights by contacting the EEOC.

## DISCUSSION

Dismissal under Rule 12(b)(6) is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted). In considering a motion to dismiss the court accepts as true all well-pleaded allegations and views the complaint in a light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993).

Defendant has moved to dismiss all or part of each of Plaintiff's claims.

### I. *ADA Claim*

■ Defendant has moved to dismiss Plaintiff's ADA claim on the basis that Plaintiff's impairments do not constitute a disability within the meaning of the ADA, and therefore Plaintiff does not come under the ADA's protection. To establish a cause of action under the ADA, a plaintiff must first show that she has a "disability" as defined by the statute. *See Doe v. University of Maryland Med. Sys. Corp.,* 50 F.3d 1261, 1265 (4th Cir.1995). The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities ...; a record of such impairment; or being regarded as having such impairment." 42 U.S.C. § 12102(2).

### A. *Plaintiff's claim of a substantial limitation*

■ Plaintiff claims that she has a disability as defined by the ADA because she has been diagnosed as having a "disability rating of 15% and 20% in both arms." (Pl.'s Compl. ¶ 14). In addition, a physician has instructed Plaintiff not to lift more than twenty pounds and to avoid repetitive motions. (Pl.'s Compl. ¶ 14). These particular impairments, however, fail as a matter of law to bring Plaintiff under the protection of the ADA.

Several courts, including those within the Fourth Circuit, have consistently held that a restriction on lifting twenty pounds does not constitute a substantial limitation on a major life activity. *In Jennings v. Greenville Utilities Comm'n,* a recent case from the Eastern District of North Carolina, the court granted a motion to dismiss in holding that a restriction on "any lifting or exertion over 20 pounds" failed as a matter of law to come within the ADA definition of disability. 1998 WL 696932, at *2, 1998 U.S. Dist. LEXIS 6125, at *6 (E.D.N.C. Mar. 3, 1998). The court in *Jennings* relied on a Fourth Circuit case, *Williams v. Channel Master,* which held that as a matter of law "a twenty-five pound lifting limitation ... does not constitute a significant restriction on one's ability to lift, work, or perform any other life activity." *Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 349 (4th Cir.1996), *cert. denied sub nom. Williams v. Avnet, Inc.,* 520 U.S. 1240, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997). Other circuits have also found that a restriction of lifting no more than twenty pounds fails to satisfy the ADA definition of disability. *See, e.g., McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 373 (6th Cir. 1997); *Wooten v. Farmland Foods,* 58 F.3d 382, 384–86 (8th Cir.1995).

Courts have also found that a restriction on engaging in repetitive motions does not amount to a substantial limitation of a major life activity. *See, e.g., McKay,* 110 F.3d at 373 (finding that as a matter of law plaintiff who could not engage in repetitive motions was not substantially limited in any major life activity); *Young. v. U.S. West Communications, Inc.,* 1998 WL 849523, at *1, 1998 U.S.App. LEXIS 31000, at *3–4 (10th Cir. Dec. 9, 1998) (holding that repetitive motion syndrome does not substantially limit a major life activity). While Plaintiff's impairment may disqualify her from certain assembly line positions, it does not "significantly restrict her ability to perform a broad range of jobs in various classes," and therefore does not constitute a disability under the ADA. *McKay,* 110 F.3d at 373.

■ Finally, Plaintiff's disability rating of 15% and 20% in both arms is not an ADA disability. The rating is not itself a physical impairment, but rather a quantitative measure of Plaintiff's inability to lift more than twenty pounds or to engage in repetitive motion. In addition, even more severe disability ratings have been held not to equate to a disability under the ADA's definition. *See Piascyk v. City of New Haven,* 64 F.Supp.2d 19, 28 (D.Conn. 1999), *aff'd,* 2000 WL 804610, 2000 U.S.App. LEXIS 9969 (2d Cir. May 11, 2000) ("Even if the 20% limitation in his leg and the 10% limitation in his back are aggregated and translated directly into a 30% limitation ... that degree of limitation does not rise to the requisite level of substantiality to qualify as a disability under the ADA."); *Howell v. Sam's Club # 8160/Wal–Mart,* 959 F.Supp. 260, 267–68 (E.D.Pa.1997), *aff'd,* 141 F.3d 1153 (3d Cir. 1998) (as a matter of law a record of 20% disability in entire body does not establish a substantial limitation on a major life activity).

### B. *Plaintiff's claim of "being regarded as" disabled*

■ Plaintiff's complaint also attempts to bring her under the protection of the ADA by claiming that Defendant regarded her as disabled. Plaintiff's complaint asserts that she is "an individual whom Nortel has regarded as disabled." (Pl.'s Compl. ¶ 31). However, Plaintiff offers no factual support for this conclusion. (Pl.'s Compl. ¶ 31). While this court accepts the truth of all Plaintiff's factual allegations in considering the sufficiency of the complaint under Rule 12(b)(6), it need not accept unsupported legal conclusions. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085–86 (4th Cir.1979). Without more than the conclusory statement that Defendant regarded Plaintiff as disabled, Plaintiff has failed to state a claim upon which relief can be granted.

In addition, an individual is regarded as having a disability if she "[h]as a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation." 29 C.F.R. § 1630.2($l$)(1). Plaintiff's factual allegation that Defendant gave her excessive work relative to other employees contradicts her unsupported statement that Defendant regarded her as disabled.

Because Plaintiff's impairments do not satisfy the ADA definition of disability and Plaintiff offers no support for the allegation that Defendant regarded her as disabled, Plaintiff does not come under the protection of the ADA. Accordingly, the court will dismiss Plaintiff's ADA claim.

### II. *Title VII Claim*

■ Title VII prohibits employment discrimination based on race, color, sex, national origin, and religious affiliation. *See*

*generally* 42 U.S.C. § 2000e. The statute makes no mention of prohibiting discrimination based on disability. Plaintiff's complaint states that Defendant violated her Title VII rights by discriminating against her in the terms and conditions of her employment on the "basis of race *and disability*." (Pl.'s Compl. ¶ 25) (emphasis added).

To the extent that Plaintiff seeks relief under Title VII for discrimination based on disability her claim will be dismissed. Defendant has not moved to dismiss Plaintiff's Title VII claim based on racial discrimination, and that claim will proceed.

### III. *Section 1981 Claim*

■ Plaintiff's complaint states that, after learning about her intent to assert claims of race and disability discrimination with the EEOC, Defendant retaliated by terminating her. Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Claims based on Section 1981 are limited to discrimination based on ancestry or ethnic characteristics. *See Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir.1984) (stating that Section 1981 does not apply to age, religious, or sex discrimination); *Tafoya v. Bobroff*, 865 F.Supp. 742, 752 (D.N.M.1994) (holding that Section 1981 does not apply to discrimination on the basis of disability), *judg't aff'd*, 74 F.3d 1250 (10th Cir.1996). Plaintiff argues, however, that the Fourth Circuit statement in *Baird v. Rose*, 192 F.3d 462 (1999), that 29 U.S.C. § 794a "specifically makes the remedies available under Title VII applicable to actions under the ADA" permits a Section 1981 claim based on a violation of the ADA. *Id.* at 470. This is an unwarranted extension of *Baird.* While Section 794a mandates the remedies available under the ADA match those available under Title VII, this does not imply that a separate action under Section 1981 premised on a violation of Title VII is also available based on a violation of the ADA. Congress's decision to incorporate certain Title VII rights and remedies into the ADA does not affect the scope of Section 1981, an entirely different statute. Consequently, to the extent Plaintiff seeks relief under Section 1981 for violation of the ADA her claim will be dismissed. Plaintiff may proceed with a Section 1981 claim based on alleged racial discrimination.

### IV. *Section 1985 Claim*

■ Plaintiff claims that Defendant and Defendant's employees violated 42 U.S.C. § 1985 by conspiring to deprive her and "other minorities or people with disabilities, of the rights, privileges, and immunities that are granted by federal statute and the United States Constitution." (Pl.'s Compl. ¶ 38). Section 1985 prohibits "two or more persons" from conspiring to deprive any person of the equal protection of the laws or of equal privileges and immunities under the laws. 42 U.S.C. § 1985(3). In order to state a claim under Section 1985 a plaintiff must allege: (1) a conspiracy motivated by discriminatory animus; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws or privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to one's person or property or deprivation of any right or privilege of a citizen of the United States. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993); *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

■ Plaintiff alleges a conspiracy under Section 1985 based on the "discriminatory actions and attitudes" of Defendant's managers and supervisors. (Pl.'s Compl. ¶ 37). In addition, Plaintiff claims that Defendant has allowed discriminatory conduct to become "so firmly entrenched in the mandates and corporate culture of [Defendant] that they constitute a conspiracy." (Pl.'s Compl. ¶ 38).

■ Fourth Circuit case law has consistently held, however, that a corporation cannot conspire with its own officers and managers. *See Buschi v. Kirven,* 775 F.2d 1240, 1251 (4th Cir.1985). This is known as the intracorporate conspiracy doctrine. The basic law of conspiracy requires two persons or entities to have a conspiracy. The doctrine recognizes that a corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. *See id.* at 1252. To avoid application of this doctrine, Plaintiff argues that it is "well settled that where, as here, there are allegations that the Defendant has a policy or custom of engaging in discrimination, the intracorporate conspiracy doctrine provides no defense." (Pl.'s Reply to Partial Mot. to Dismiss at 8). To support this argument, Plaintiff cites two cases: *Carnegie v. Miller,* 811 F.Supp. 907 (S.D.N.Y.1993), and *Washington v. Duty Free Shoppers,* 696 F.Supp. 1323 (N.D.Cal.1988). Contrary to Plaintiff's assertion, the Fourth Circuit has not recognized the "policy or custom" exception to the intracorporate conspiracy doctrine. In addition, both cases cited by Plaintiff in which courts from other circuits recognized this exception are clearly distinguishable from the current case.

In *Carnegie,* the plaintiff alleged a violation of Section 1985(3) by employees of two discrete governmental entities—the New York City Housing Authority and the Port Authority of New York and New Jersey. With two separate entities involved, the intracorporate conspiracy doctrine did not factor into the court's decision. *See Carnegie,* 811 F.Supp. at 909. In addition, the *Carnegie* court stated that the plaintiff could establish a viable claim under 42 U.S.C. *§ 1983* by showing a custom or policy of constitutional violations. *See id.* at 912. The court did not apply this "custom or policy" exception from the intracorporate conspiracy doctrine to the plaintiff's Section *1985* claim.

Likewise, *Washington v. Duty Free Shoppers* offers little support for not applying the intracorporate conspiracy doctrine to the current situation. While the district court in *Washington* refused to recognize the intracorporate conspiracy doctrine, its decision hinged on the fact that the Ninth Circuit had not adopted the doctrine in the civil rights context. In contrast, the Fourth Circuit has clearly adopted the doctrine in the civil rights context in *Buschi v. Kirven,* 775 F.2d at 1251. Thus the *Washington* case is inapposite to the present case.

Because Plaintiff alleges that only Defendant and Defendant's employees conspired to deprive her of equal privileges and immunities under the law, Plaintiff's Section 1985 conspiracy claim is barred by the intracorporate conspiracy doctrine. Accordingly, Plaintiff's claim under 42 U.S.C. § 1985 will be dismissed.

## V. *Intentional Infliction of Emotional Distress*

■ To prevail on the claim of intentional infliction of emotional distress Plaintiff must show: (1) that the Defendant engaged in extreme and outrageous conduct; (2) that the conduct was intended to cause severe emotional distress; and (3) that the conduct does in fact cause severe emotional distress. *See Waddle v. Sparks,*

331 N.C. 73, 414 S.E.2d 22 (1992). Whether the alleged conduct is sufficiently extreme and outrageous to support a claim of intentional infliction of emotional distress is a question of law. *See Lenins v. K–Mart Corp.,* 98 N.C.App. 590, 599, 391 S.E.2d 843, 848 (1990). To be considered "extreme and outrageous" the conduct must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Hogan v. Forsyth Country Club Co.,* 79 N.C.App. 483, 493, 340 S.E.2d 116, 123 (1986) (quoting *Restatement (Second) of Torts* § 46 cmt. (d) (1965)). Furthermore, it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress. *See Atkins v. USF Dugan, Inc.,* 106 F.Supp.2d 799 (M.D.N.C.1999); *Wilson v. Southern Nat'l Bank,* 900 F.Supp. 803, 811–12 (W.D.N.C.1995) (citing *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988)). Given this extremely rigorous standard, particularly in the employment setting, Plaintiff has failed as a matter of law to allege misconduct by Defendant sufficient to sustain a claim of intentional infliction of emotional distress.

■ The relevant conduct by Defendant that Plaintiff complains of in regard to her emotional distress claim consists of: (1) giving her an excessive workload compared to her co-workers; (2) requiring that she receive supervisor permission to attend physical therapy, while allowing white employees to attend therapy whenever they wanted; (3) failing to file paperwork on a timely basis and thereby causing her to stop receiving disability payments; (4) creating a hostile work environment; and (5) discharging her in retaliation for exercising her rights under Title VII. While the court finds this conduct deplorable if committed, such conduct fails to rise to the level of "extreme and outrageous" under North Carolina law.

Plaintiff relies on two cases to support the proposition that Defendant's conduct rises to the level of extreme and outrageous. Both cases, however, are readily distinguishable from the current situation. Plaintiff first cites *Baird v. Rose,* a recent Fourth Circuit decision. 192 F.3d 462 (4th Cir.1999). This case provides limited precedential guidance, though, because the court applied Virginia, rather than North Carolina, state law in determining that the plaintiff had sufficiently stated a claim of intentional infliction of emotional distress. In addition, the facts of *Baird* provide little support for Plaintiff's position. In *Baird* the defendant school teacher intentionally humiliated a high school student in front of her classmates even though the teacher knew that the student suffered from clinical depression and had only recently attempted suicide because of perceived mistreatment at the hands of the same teacher. While the Fourth Circuit found these facts sufficient to prevent dismissal of the plaintiff's intentional infliction claim, several factors distinguish *Baird* from the current case: Baird did not involve the employment context; it involved mistreatment of a youth; and the defendant knew about the particular susceptibility of the plaintiff.

The other case Plaintiff cites, *Mayse v. Protective Agency, Inc.,* provides greater support for her claim of intentional infliction of emotional distress, but still differs considerably from Plaintiff's situation. 772 F.Supp. 267 (W.D.N.C.1991), *aff'd,* 46 F.3d 1125 (4th Cir.1995). In *Mayse,* the plaintiff, an African–American female, alleged that her employer forced her to deny employment to minority applicants and to

discharge other minority employees simply because of their race. When the plaintiff refused to continue this discriminatory practice, the employer demoted her and eventually fired her. Unlike the present case, the plaintiff in *Mayse* not only suffered from discriminatory conduct by her employer, she was also forced by the employer to participate in discrimination against others.

A case not cited by Plaintiff, *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 340 S.E.2d 116 (1986), provides greater insight into what constitutes extreme and outrageous conduct in the employment context. In *Hogan* three plaintiffs brought claims of intentional infliction of emotional distress. The *Hogan* court found one plaintiff's allegations sufficient to support the claim, but found summary judgment appropriate for the other two plaintiffs. In the claim that the court allowed to proceed the plaintiff alleged that her supervisor continuously made sexually suggestive remarks to her, touched her in an offensive manner, screamed profanities at her when she rejected his advances, threatened her with bodily injury, and advanced toward her with a knife and slammed it down in front of her in a threatening manner. *Hogan*, 79 N.C.App. at 490, 340 S.E.2d at 121. In contrast, in one of the claims the court deemed insufficient to support a finding of intentional infliction of emotional distress the employee alleged that her supervisor screamed profanities at her, called her names, interfered with her work, and threw things at her. *Hogan*, 79 N.C.App. at 493–94, 340 S.E.2d at 122–23. In the other dismissed claim, the defendant purportedly refused to grant the plaintiff pregnancy leave, directed her to carry objects weighing more than ten pounds even though she was pregnant, refused to let her leave work to go to the hospital, and fired her when she left without permission. *Hogan*, 79

N.C.App. at 494, 340 S.E.2d at 123. In light of this precedent, Plaintiff fails to allege actions by Defendant that rise to the level of extreme and outrageous conduct as a matter of law. As a result, Plaintiff's claim for intentional infliction of emotional distress will be dismissed.

## VI. *Negligent Infliction of Emotional Distress*

Defendant challenges Plaintiff's claim of negligent infliction of emotional distress with three arguments: (1) the claim is barred by the exclusivity provision of the North Carolina Workers Compensation Act, North Carolina General Statute Section 97–10.1; (2) Plaintiff alleges nothing other than employment discrimination—an inherently intentional act—and therefore Plaintiff has not, as a matter of law, also alleged negligent acts; and (3) because the conduct Plaintiff alleges falls short of "extreme and outrageous" behavior for the purposes of intentional infliction of emotional distress, a negligent infliction claim automatically fails as well.

Under the North Carolina Workers Compensation Act ("the Act") employees automatically receive compensation for injury or death by accident "arising out of and in the course of ... employment." N.C. Gen.Stat. § 97–3. In exchange for the certainty of receiving this benefit, however, "the employee and his dependents give up their common law right to sue the employer for negligence." *Pleasant v. Johnson*, 312 N.C. 710, 712, 325 S.E.2d 244, 246–47 (1985). Defendant argues that Plaintiff's claim of negligent infliction of emotional distress is barred by the exclusivity provision of the Act, North Carolina General Statute Section 97–10.1. The court disagrees. In *Hogan*, the North Carolina Court of Appeals held that an intentional infliction claim was not barred

by the Act's exclusivity provision. *See Hogan*, 79 N.C.App. at 490, 340 S.E.2d at 121. The *Hogan* court reasoned that the emotional distress suffered by the plaintiff fell outside the range of injuries covered by the Act, and therefore the exclusivity provision did not apply. The same rationale applies to Plaintiff's negligent infliction claim based on racial discrimination. Any emotional distress suffered by Plaintiff does not fall within the scope of injuries covered by the Act. As a result, Plaintiff's negligent infliction claim is not barred by the Act.

█ Defendant further argues that even though some claims of negligent infliction may proceed despite the Act's exclusivity provision, Plaintiff's claim should be dismissed because all conduct occurred in the "time, place and circumstances" of Plaintiff's employment. (Def.'s Partial Mot. to Dismiss at 12). The Act precludes suit for injuries suffered "in the course of . . . employment." N.C. Gen.Stat. § 97–3. In determining whether an injury occurred in the course of employment, the court considers "the time, place and circumstances under which an accident occurs." *Bare v. Wayne Poultry Co.*, 70 N.C.App. 88, 91, 318 S.E.2d 534, 537 (1984). In *Bare* the court held that, because an injury occurred during the hours of employment, at the place of employment, and while the employee was engaged in her work duties, the injury was covered by the Act. According to Defendant, because the discrimination alleged by Plaintiff occurred either in the workplace or during Plaintiff's time of employment any injuries Plaintiff suffered were "in the course of employment," and therefore recovery for negligent infliction is barred by the Act. This argument fails to consider the nature of Plaintiff's injury. Unlike the injury suffered by the employee in *Bare*, Plaintiff's emotional distress is not a natural and probable consequence or incident of her employment. As a result it should not be considered to have occurred "in the course of" Plaintiff's employment. As the court stated in *Hogan*, "[discrimination] is not a risk to which an employee is exposed because of the nature of the employment, but is a risk to which the employee could be equally exposed outside the employment. Therefore, [the plaintiff's claim] is neither covered nor barred by the Act." *Hogan*, 79 N.C.App. at 496, 340 S.E.2d at 124 (citations omitted). *See also Ridenhour v. Concord Screen Printers, Inc.*, 40 F.Supp.2d 744 (M.D.N.C.1999) (holding that exclusivity provision does not bar a claim of negligent infliction of emotional distress based on sexual harassment). Although Plaintiff's emotional distress may result from incidents that occurred at work, her claim for negligent infliction is not barred by the Act's exclusivity provision.

█ Defendant also argues that Plaintiff's claim for negligent infliction of emotional distress should not survive because Plaintiff has alleged discriminatory conduct, which is inherently intentional. An unpublished 4th Circuit case cited by Defendant supports Defendant's argument. *See Mitchell v. Lydall, Inc.*, 1994 WL 38703, at *3–4, 1994 U.S.App. LEXIS 2177, at *9–10 (4th Cir. Feb. 10, 1994). The court finds the Fourth Circuit's reasoning persuasive. Like the plaintiff in that case, Plaintiff Thomas's allegations in this case charge nothing but intentional acts by Defendant. Therefore, Plaintiff fails to state a claim for negligent infliction of emotional distress.

Finally, Defendant argues that Plaintiff's negligent infliction claim should be barred because when conduct is not extreme and outrageous for the purposes of intentional infliction of emotional distress, a negligent infliction of emotional distress

claim fails as well. Because this claim will be dismissed for the reason stated above, the court will not address this argument, especially in view of the apparently still developing law in the state courts in this area.[3]

## CONCLUSION

For the foregoing reasons, the court: (1) will grant Defendant's motion to dismiss Plaintiff's ADA claim; (2) will grant Defendant's motion to dismiss Plaintiff's Title VII claim to the extent that claim is based on disability; (3) will grant Defendant's motion to dismiss Plaintiff's claim under 42 U.S.C. § 1981 to the extent that claim is based on a violation of the ADA; (4) will grant Defendant's motion to dismiss Plaintiff's claim under 42 U.S.C. § 1985; (5) will grant Defendant's motion to dismiss Plaintiff's claim for intentional infliction of emotional distress; and (6) will grant Defendant's motion to dismiss Plaintiff's claim for negligent infliction of emotional distress.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## *ORDER*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendant's motion to dismiss Plaintiff's ADA claim is **GRANTED**; Defendant's motion to dismiss Plaintiff's Title VII claim to the extent that claim is based on disability is **GRANTED**; Defendant's motion to dismiss Plaintiff's claim under 42 U.S.C. § 1981 to the extent that claim is based on a violation of the ADA is **GRANTED**; Defendant's motion to dismiss Plaintiff's claim under 42 U.S.C. § 1985 is **GRANTED**; Defendant's motion to dismiss Plaintiff's claim for intentional infliction of emotional distress is **GRANTED**; and Defendant's motion to dismiss Plaintiff's claim for negligent infliction of emotional distress is **GRANTED**.

---

3. Compelling reasons exist for focusing on the nature of the conduct itself, whether it is committed intentionally or negligently. Otherwise, conduct that is not extreme or outrageous enough to satisfy the intentional infliction standard could, in the absence of the same conduct requirements for both causes of action, be actionable if negligently inflicted but not actionable if done intentionally. *Compare Lorbacher v. Housing Auth. of Raleigh,* 127 N.C.App. 663, 677, 493 S.E.2d 74, 82 (1997) ("We find no principled distinction however for employing a higher or lower threshold for one over the other."), *and Haylash v. Volvo Trucks N. Am., Inc.,* 1998 U.S. Dist. LEXIS 12511 at *4–5 (M.D.N.C.1998), *with McAllister v. Ha,* 347 N.C. 638, 645, 496 S.E.2d 577, 583 (1998) (to state a claim for negligent infliction of emotional distress an allegation of ordinary negligence will suffice), *and Buser v. Southern Food Serv., Inc.,* 73 F.Supp.2d 556, 574 (M.D.N.C.1999).